# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HEALTHY GULF, et al.

*Plaintiffs*,

v.

DEBRA A. HAALAND, et al.

*Defendants*.

Civil Action
No. 1:23-cv-02487-APM

## DEFENDANTS' ANSWER

Debra A. Haaland in her official capacity as Secretary of the U.S. Department of the Interior (Secretary); Laura Daniel-Davis in her official capacity as Principal Deputy Assistant Secretary of the U.S. Department of the Interior for Land and Mineral Management; the U.S. Department of the Interior ("Interior"); and the Bureau of Ocean Energy Management ("BOEM") (collectively, "Defendants"), through counsel, answer the complaint filed in this case on August 25, 2023 (ECF No. 1) as follows. The numbered paragraphs below correspond to the numbered paragraphs in the Complaint. Defendants do not specifically respond to any section headings included in the Complaint, but to the extent those headings expressly or implicitly include substantive legal or factual allegations, Defendants deny those allegations. Defendants deny each and every allegation in the Complaint that is not specifically admitted in this Answer.

1.      The allegations in Paragraph 1 are characterizations of Plaintiffs' case to which no response is required. To the extent a response is required, Defendants deny the allegations.

1

2.      Defendants admit that the Gulf of Mexico is one of the most productive and biodiverse ecosystems in the United States, where thousands of species ranging from simple invertebrates to marine mammals including dolphins and whales live.  Defendants also admit that the Gulf of Mexico includes habitat for five species of sea turtles and is the exclusive known habitat for the Rice's whale, a species the NMFS estimated to have less than 100 individuals, with recent surveys providing mean estimates of 50 individuals or less.  The remaining allegations in Paragraph 2 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

3.      Defendants admit that the *Deepwater Horizon* spill occurred in 2010 and that, according to the National Oceanic and Atmospheric Administration, scientists have estimated that the population of the Rice's whale decreased by 22 percent following the spill. BOEM analyzed the impacts of climate change in Section 4.0.2 of the 2023 SEIS and found *inter alia* that climate change has led to increased numbers and intensity of storms and hurricanes, which have led to greater storm damage and erosion in coastal areas. The remaining allegations in Paragraph 3 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

4.      Defendants admit that Executive Order 14,008 provides that responding to the climate crisis will require both significant short-term global reductions in greenhouse gas emissions and net-zero global emissions by mid-century or before.  Defendants admit that, according to NOAA, the June-August 2023 global surface temperature was 2.07°F above the 20th-century average of 60.1°F, which ranks as the warmest June–August

period in the 174-year global climate record, and 0.43°F above the previous record.  And

further, Defendants admit that, according to reports Phoenix, Arizona, had 31 consecutive

days of 110°F or higher temperatures in July 2023.  Defendants also admit that July,

August and September 2023 set records for the highest monthly sea surface temperature

anomalies of any month in NOAA's 174-year record. Defendants also admit that in July

2023 NOAA recorded water temperatures over 100°F offshore Florida. The remaining

allegations in Paragraph 4 are vague and ambiguous; Defendants therefore lack

knowledge or information sufficient to form a belief about the truth of the allegations and

deny on that basis.

5.      Defendants admit that Lease Sale 261, as noticed in the Final Notice of Sale published on

August 25, 2023,[1] offered approximately 67.3 million acres of the OCS for oil and gas

leasing. Defendants aver that for Lease Sale 261, BOEM estimated that the projected

---

[1] The August 25, 2023, Final Notice of Sale for Lease 261 announced that sale would be held on September 27, 2023.  *See* 88 Fed. Reg. 58,300 (Aug. 25, 2023).  The State of Louisiana and other plaintiffs challenged that Final Notice of Sale in the U.S. District Court for the Western District of Louisiana.  On September 21, 2023, the district court issued a preliminary injunction order requiring BOEM to modify the lease sale area and the Protected Species lease stipulation.  The court also ordered BOEM to hold the sale on or before September 30, 2023.  *See* Mem. Order, *Louisiana v. Haaland*, No. 2:23-cv-01157-JDC-KK, ECF No. 82 (Sept. 21, 2023).  On September 22, 2023, the government appealed and filed an emergency motion in the U.S. Court of Appeals for the Fifth Circuit, requesting that the court stay or modify the injunction.  Intervenor-Defendants also appealed and filed an emergency motion in the Fifth Circuit, requesting that the Court stay the injunction in its entirety.  On September 25, 2023, the Fifth Circuit issued an order directing BOEM to hold Lease Sale 261 as required by the district court, but permitting BOEM until November 8, 2023, to hold the sale.  *See* Unpublished Order, *Louisiana v. Haaland*, No. 23-30666, ECF No. 58 (Sept. 25, 2023).  On October 6, 2023, BOEM published a new Final Notice of Sale in accordance with the September 25 order. See 88 Fed. Reg. 69,660 (Oct. 6, 2023).  On October 26, 2023, the Fifth Circuit stayed the injunction in its entirety pending further action by that court and scheduled oral argument for November 13, 2023.  *See* Order, *Louisiana v. Haaland*, No. 23-30666, ECF No. 119 (Oct. 26, 2023).  On November 2, 2023, BOEM postponed Lease Sale 261 in light of the Fifth Circuit's October 26 order.

amounts of resources that could be discovered, developed, and produced as a result of a single Gulf of Mexico lease sale are 0.211-1.118 billion barrels of oil and 0.547-4.424 trillion cubic feet of gas. The remaining allegations in Paragraph 5 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

6.     Defendants admit that BOEM announced on its website the availability of the Gulf of Mexico OCS Oil and Gas Lease Sales 259 and 261 Final Supplemental Environmental Impact Statement (2023 SEIS) on January 9, 2023, and that the 2023 SEIS was intended to assess the environmental effects of Lease Sales 259 and 261. Defendants deny the remaining allegations in Paragraph 6.

7.     Defendants deny the allegations in Paragraph 7.

8.     Defendants aver that on February 27, 2023, BOEM announced the availability of a Record of Decision (ROD) for Lease Sale 259, signed on February 22, 2023, and that Gulf of Mexico Lease Sale 259 lease area encompassed 73.3 million acres.

9.     Defendants admit that BOEM attached an Errata Sheet to the ROD for Lease Sale 259, which listed corrections to the 2023 SEIS, and, also in February 2023, BOEM published an updated version of the Gulf of Mexico OCS Oil and Gas Leasing Greenhouse Gas Emissions and Social Cost Analysis: Addendum to the Gulf of Mexico Lease Sales 259 and 261 SEIS and Technical Report – Corrected (GHG Analysis).  The remaining allegations in Paragraph 9 purport to characterize the Errata Sheet and GHG Analysis, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced documents, they are denied.

10.    The allegations in Paragraph 10 are Plaintiffs' characterization of their ongoing case, *Healthy Gulf v. Haaland*, No. 1:23-cv-00604, (D.D.C.) (complaint filed Mar. 6, 2023), in this Court related to Lease Sale 259, to which no response is required. To the extent a response is required, Defendants deny the allegations.

11.    Defendants admit that on August 25, 2023, BOEM published a Federal Register notice announcing the ROD for Lease Sale 261, with a lease sale area of 67.3 million acres. The allegations in the second sentence of Paragraph 11 purport to characterize the ROD for Lease Sale 261, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced ROD, they are denied.

12.    The allegations in the first sentence of Paragraph 12 are admitted.  The remaining allegations purport to characterize the ROD for Lease Sale 261, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced ROD, they are denied.

13.    Defendants admit that BOEM released the Gulf of Mexico GHG Analysis Updates for Lease Sale 261 in July 2023.  The remaining allegations in the first sentence of Paragraph 13 purport to characterize the GHG Analysis Updates for Lease Sale 261 and the ROD for Lease Sale 261, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced GHG Analysis and ROD, they are denied.  The remaining allegations of Paragraph 13 purport to characterize the ROD for Lease Sale 261, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced ROD, they are denied.

14.    Defendants admit the allegations in Paragraph 14.

15.     Defendants deny the allegations in Paragraph 15.

16.     Paragraph 16 consists of Plaintiffs' requests for relief from the Court, to which no response is required. To the extent a response is required, Defendants deny the allegations.

## JURISDICTION AND VENUE

17.     The allegations in Paragraph 17 are conclusions of law to which no response is required; to the extent a response is required, they are denied.

18.     The allegations in Paragraph 18 are conclusions of law to which no response is required; to the extent a response is required, they are denied.

19.     The allegations in Paragraph 19 are conclusions of law to which no response is required; to the extent a response is required, they are denied.

## PARTIES

20.     Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 20 and deny them on that basis.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and deny them on that basis.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and deny them on that basis.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and deny them on that basis.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and deny them on that basis.

25.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 25 and deny them on that basis.

26.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 26 and deny them on that basis.

27.     The allegations in the first through fifth sentences of Paragraph 27 are vague and ambiguous; Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations and deny them on that basis. Defendants deny the allegations in the sixth sentence of Paragraph 27.  The allegations in the seventh sentence of Paragraph 27 are vague and ambiguous; Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations and deny them on that basis. The remaining allegations in Paragraph 27 are conclusions of law, characterizations of Plaintiffs' case, or requests for relief from the Court to which no response is required. To the extent a response is required, Defendants deny the allegations.

28.     Defendants deny the allegations in the first sentence of Paragraph 28.  Regarding the allegations in the first clause of the third sentence, Defendants deny that they failed to comply with the National Environmental Policy Act (NEPA).  The remaining allegations in the second through fifth sentences of Paragraph 28 are vague and ambiguous; Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations and deny them on that basis. The remaining allegations in Paragraph 28 are characterizations of Plaintiffs' case, or requests for relief from the Court to which no response is required. To the extent a response is required, Defendants deny the allegations.

29.     Defendants admit that Debra A. Haaland is the Secretary of the Interior (Secretary), is charged with overseeing implementation of provisions of the Outer Continental Shelf Lands Act (OCSLA), and that OCSLA vests the Secretary of the Interior with the authority to hold oil and gas lease sales on the Outer Continental Shelf (OCS) and issue leases. The allegation in the fourth sentence of Paragraph 29 constitutes a conclusion of law to which no response is required; to the extent a response is required, Defendants deny the allegations.

30.     Defendants admit that Laura Daniel-Davis, at the time she signed the ROD for Lease Sale 261, was the Principal Deputy Assistant Secretary - Land and Minerals Management (exercising the delegable functions of the Assistant Secretary - Land and Minerals Management), and that the Secretary has delegated her the authority to sign RODs for lease sales under OCSLA.  Defendants further note that Laura Daniel-Davis is currently the Acting Deputy Secretary of the Interior. The allegation in the third sentence of Paragraph 30 constitutes a conclusion of law to which no response is required; to the extent a response is required, Defendants deny the allegations.

31.     Defendants admit that the U.S. Department of the Interior (Interior) is the federal department with authority, delegated through the Secretary, under OCSLA to hold oil and gas lease sales on the OCS and to issue OCS oil and gas leases.  The allegation in the second sentence of paragraph 31 constitutes a conclusion of law to which no response is required; to the extent a response is required, Defendants deny the allegations.

32.     Defendants admit that the Bureau of Ocean Energy Management (BOEM) is the federal agency within Interior delegated the authority to hold oil and gas lease sales on the OCS and to issue leases.  The allegation in the second sentence of paragraph 32 constitutes a

conclusion of law to which no response is required; to the extent a response is required, Defendants deny the allegations.

## STATUTORY BACKGROUND

33.    The allegations in Paragraph 33 constitute conclusions of law to which no response is required; to the extent a response is required, Defendants deny the allegations.

34.    The allegations in Paragraph 34 and footnote 1 purport to characterize NEPA, the Council on Environmental Quality (CEQ) regulations implementing NEPA, Federal Register notices, and the Interior Department's NEPA regulations, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced statute or regulations, they are denied.

35.    The allegations in Paragraph 35 purport to characterize NEPA and a judicial decision, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced statute or judicial decision, they are denied.

36.    The allegations in Paragraph 36 purport to characterize NEPA, the Council on Environmental Quality (CEQ) regulations implementing NEPA, and a judicial decision, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced statute, regulations, or judicial decision, they are denied.

37.    The allegations in Paragraph 37 constitute legal conclusions to which no response is required.

38.    The allegations in Paragraph 38 purport to characterize the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their

contents; to the extent the allegations are inconsistent with the referenced regulations, they are denied.

39.     The allegations in Paragraph 39 purport to characterize the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced regulations, they are denied.

40.     The allegations in Paragraph 40 constitute legal conclusions to which no response is required.  In addition, Paragraph 40 purports to characterize a judicial decision which speaks for itself and is the best evidence of its contents; to the extent that allegations are inconsistent with the referenced decision, they are denied.

41.     The allegations in Paragraph 41 purport to characterize the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced regulations, they are denied.

42.     The allegations in Paragraph 42 purport to characterize NEPA and the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced statute and regulations, they are denied.

43.     The allegations in Paragraph 43 purport to characterize the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced regulations, they are denied.

44.     The allegations in Paragraph 44 purport to characterize the Outer Continental Shelf Lands

        Act (OCSLA) and a Federal Register notice, which speak for themselves and are the best

        evidence of their contents; to the extent the allegations are inconsistent with the

        referenced statute and Federal Register notice, they are denied.

45.     The allegations in Paragraph 45 purport to characterize an amendment to OCSLA, which

        speaks for itself and is the best evidence of its contents; to the extent the allegations are

        inconsistent with the referenced statute, they are denied.

46.     The allegations in Paragraph 46 purport to characterize OCSLA, which speaks for itself

        and is the best evidence of its contents; to the extent the allegations are inconsistent with

        the referenced statute, they are denied.

47.     The allegations in Paragraph 47 purport to characterize OCSLA, which speaks for itself

        and is the best evidence of its contents; to the extent the allegations are inconsistent with

        the referenced statute, they are denied.

48.     The allegations in Paragraph 48 purport to characterize the CEQ regulations

        implementing NEPA, which speak for themselves and are the best evidence of their

        contents; to the extent the allegations are inconsistent with the referenced regulations,

        they are denied.

49.     The allegations in Paragraph 49 purport to characterize OCSLA, which speaks for itself

        and is the best evidence of its contents; to the extent the allegations are inconsistent with

        the referenced statute, they are denied.

50.     The allegations in Paragraph 50 purport to characterize OCSLA and regulations

        implementing OCSLA, which speak for themselves and are the best evidence of their

contents; to the extent the allegations are inconsistent with the referenced statute or regulations, they are denied.

51.     The allegations in Paragraph 51 purport to characterize OCSLA, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced statute, they are denied.

52.     The allegations in Paragraph 52 purport to characterize OCSLA, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced statute, they are denied.

53.     The allegations in the first sentence of Paragraph 53 purport to characterize Interior's Departmental Manual and the regulations implementing OCSLA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced manual or regulations, they are denied.  The allegations in the second sentence of Paragraph 53 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

54.     Defendants admit that BOEM is the federal agency which the Secretary has authorized to manage certain leasing, exploration, development, and production activities on the OCS under OCSLA, but aver that the Bureau of Safety and Environmental Enforcement has also been delegated certain other authorities related to these activities.

55.     The allegations in Paragraph 55 purport to characterize the Administrative Procedure Act (APA), which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced statute, they are denied.

56.     The allegations in Paragraph 56 purport to characterize the APA, which speaks for itself
        and is the best evidence of its contents; to the extent the allegations are inconsistent with
        the referenced statute, they are denied.

57.     The allegations in Paragraph 57 purport to characterize the APA, which speaks for itself
        and is the best evidence of its contents; to the extent the allegations are inconsistent with
        the referenced statute, they are denied.

58.     The allegations in Paragraph 58 constitute legal conclusions to which no response is
        required.

59.     The allegations in Paragraph 59 purport to characterize the Inflation Reduction Act of
        2022 (IRA), which speaks for itself and is the best evidence of its contents; to the extent
        the allegations are inconsistent with the referenced statute, they are denied.

60.     The allegations in Paragraph 60 purport to characterize the IRA, which speaks for itself
        and is the best evidence of its contents; to the extent the allegations are inconsistent with
        the referenced statute, they are denied.

61.     The allegations in Paragraph 61 purport to characterize the IRA, which speaks for itself
        and is the best evidence of its contents; to the extent the allegations are inconsistent with
        the referenced statute, they are denied.

62.     The allegations in Paragraph 62 purport to characterize a Federal Register notice, which
        speaks for itself and is the best evidence of its contents.  To the extent the allegations are
        inconsistent with the referenced Federal Register notice, they are denied.

63.     The allegations in Paragraph 63 purport to characterize the IRA, which speaks for itself
        and is the best evidence of its contents; to the extent the allegations are inconsistent with
        the referenced statute, they are denied.

## STATEMENT OF FACTS

64.    Defendants admit that the Gulf includes biodiverse tropical and temperate ecosystems. The remaining allegations in Paragraph 64, including the use of terms such as "extraordinary," "aesthetic," and "most productive" are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny them on that basis.

65.    The allegations in Paragraph 65 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.  Defendants aver that the Gulf of Mexico is home to thousands of marine species, including a variety of invertebrates, fish, sea turtles, and marine mammals.

66.    Defendants admit the allegations in the first sentence of Paragraph 66.  As to the allegations in the second sentence, Defendants admit that the National Marine Fisheries Service's (NMFS) recent surveys of the Rice's whale estimate less than 100 individuals, providing mean estimates of 50 individuals or less.

67.    The allegations in the first and third sentence of Paragraph 67 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis. As to the allegations in the second sentence, Defendants aver that NOAA's 2020 Fisheries of the United States report estimated that the Gulf of Mexico commercial fishery represented 14% of landings and 15% of total value in the U.S. in 2020.

68.    With regard to the allegations in the second sentence of Paragraph 68, Defendants aver that as of July 1, 2023, there were 2,057 active leases in the Gulf of Mexico; 513

producing leases; and the acreage of active leases was 11,051,929.  The remaining allegations in Paragraph 68 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

69.    Defendants admit that OCS oil and gas operations on a lease generally occur in four phases: (1) exploration to locate viable oil or natural gas deposits; (2) development well drilling, platform construction, and pipeline infrastructure; (3) operation (oil or gas production and transport); and (4) decommissioning facilities.  The remaining allegations in Paragraph 69 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

70.    Defendants admit that BOEM analyzed the effects from OCS oil and gas operations in the 2023 SEIS, Multisale EIS, and 2018 SEIS, including vessel strikes, noise, reasonably foreseeable oil spills, habitat modification, marine debris, and water pollution.  The remaining allegations in Paragraph 70 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

71.    Defendants admit that the Deepwater Horizon sank on April 20, 2010, killed eleven people, and caused an oil spill. Paragraph 71 also purports to reference a judicial decision, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced decision, they are denied. The remaining allegations in Paragraph 71 are vague and ambiguous; Defendants therefore lack

knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

72.     Defendants admit that the Deepwater Horizon explosion caused approximately 4.9 million barrels of oil and large quantities of gas to spill into the Gulf of Mexico over an 87-day period – the largest in history to affect U.S. waters.  The spill oiled 1,300 miles of shoreline across five states; the cumulative extent of the surface oil slick totaled 43,300 square miles. Further, Defendants admit that 1 million gallons of dispersants were applied to the waters of the spill area to disperse the spilled oil. The remaining allegations in Paragraph 72 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

73.     Defendants admit that NOAA stated that the 2010 Deepwater Horizon disaster affected a broad array of linked resources and ecological services over a large area and described it as an injury to the entire ecosystem of the northern Gulf of Mexico. Defendants admit that NOAA has stated that scientists have estimated that the population of the Rice's whale decreased by 22 percent following spill. The remaining allegations in Paragraph 73 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

74.     The allegations in Paragraph 74 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

75.     The allegations in Paragraph 75 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

76.     The allegations in Paragraph 76 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

77.     Defendants admit the allegations in the first sentence of Paragraph 77.  The remaining allegations in Paragraph 77 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

78.     The allegations in Paragraph 78 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

79.     The allegations in Paragraph 79 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

80.     In the first sentence of Paragraph 80, Defendants admit that infrastructure can be damaged by storms.  However, the term "frequently" is vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegation and deny on that basis.  Defendants admit that in September 2004 Hurricane Ivan caused a subsea mudslide that resulted in the toppling of a platform and damage to wells causing a series of spills at the Taylor MC20 Well Site, and response activities by the Coast Guard remain ongoing.  Defendants also admit that in September

2008, Hurricanes Ike and Gustav occurred within a two-week period, and together the storms caused 58 total spills, totaling approximately 5,856.8 barrels of oil.

81.   The allegations in the first sentence of Paragraph 81 are vague and ambiguous, particularly as to the use of the term "common occurrence"; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis. As to the second sentence of Paragraph 81, Defendants admit that Hurricane Laura damaged industrial facilities along the Louisiana Coast; however, the term "elevated toxic emissions" is vague and ambiguous and Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations in the rest of this sentence and deny them on that basis.

82.    As to the first sentence in Paragraph 82, Defendant's admit that sea level rise and costal erosion are cumulative impacts to neighboring Gulf states considered in the 2023 SEIS. The second sentence of Paragraph 82 purports to characterize the Fourth National Climate Assessment, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced Assessment, they are denied. The remaining allegations in Paragraph 82 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

83.   Defendants admit that the exploration, development, and production of oil and gas in the Gulf as well as accidental releases of methane will result in emissions of greenhouse gases.

84.     The allegations in Paragraph 84 are vague and ambiguous, particularly as to the use of the term "main"; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

85.     The allegations in Paragraph 85 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

86.     The allegations in the first sentence of Paragraph 86 purport to characterize an Intergovernmental Panel on Climate Change (IPCC) report, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced report, they are denied.  The remaining allegations in Paragraph 86, including those regarding "most estimates," are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

87.     The allegations in the first sentence of Paragraph 87 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.  The remaining allegations of Paragraph 87 purports to characterize a 2016 analysis and an International Energy Agency report, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced analyses, they are denied.

88.     The allegations in Paragraph 88 purport to characterize the Executive Order 14008, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced executive order, they are denied.

89.  The allegations in the first through fourth sentences of Paragraph 89 purport to characterize the United States' commitments under the Paris Agreement, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced agreement, they are denied. The fifth sentence of Paragraph 89 appears to quote from an April 2023 White House statement (available at https://www.whitehouse.gov/briefing-room/statements-releases/2023/04/20/fact-sheet-president-biden-to-catalyze-global-climate-action-through-the-major-economies-forum-on-energy-and-climate/), which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced statement, they are denied.  The last sentence of Paragraph 89 purports to characterize the 2023 SEIS, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the 2023 SEIS, they are denied.

90.  The allegations in Paragraph 90 purport to characterize the January 9, 2023, interim CEQ guidance, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced guidance, they are denied.

91.  The allegations in Paragraph 91 purport to characterize the January 9, 2023, interim CEQ guidance, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced guidance, they are denied.

92.  Defendants admit the allegations in Paragraph 92, but aver that prior to 2017 BOEM sometimes held sales for more than one planning area on the same day.

93.  Defendants admit that BOEM has developed planning areas for the administrative management of leasing and operations under OCSLA and the map delineating these areas is available at https://www.boem.gov/sites/default/files/documents/oil-gas-

energy/leasing/regional-leasing/gulf-mexico-region/GOMR-Lease-Statistics-Map-Blocks-Active-Leases.pdf. Defendants admit the allegations in the last sentence of Paragraph 93.

94.    The first sentence of Paragraph 94 purports to characterize a Notice of Availability for the 2017-2022 OCS oil and Gas Leasing Program, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced guidance, they are denied.  The remaining allegations in Paragraph 94 are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

95.    The allegations in Paragraph 95 purport to characterize the Final 2023 SEIS and other EISs from which it tiers, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced SEIS and other EISs, they are denied.

96.    The allegations  in Paragraph 96 purport to characterize the Notice of Availability and Request for Comments on the 2017-2022 Outer Continental Shelf Oil and Gas Leasing Program, the 2017-2022 Outer Continental Shelf Oil and Gas Leasing Program (2017-2022 National OCS Oil and Gas Program) and the Draft Programmatic EIS, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced Notice, the 2017-2022 National OCS Oil and Gas Program and Draft EIS, they are denied.

97.    Defendants admit the allegations in the first sentence of Paragraph 97. The second and third sentences purport to characterize the Programmatic EIS for the 2017-2022 National OCS Oil and Gas Program, which speaks for itself and is the best evidence of its

contents; to the extent the allegations are inconsistent with the referenced EIS, they are denied. Defendants admit that BOEM announced the availability of the Final Programmatic EIS Record of Decision on January 19, 2017.

98.   Defendants admit the allegations in the first sentence of Paragraph 98. The allegations in the second sentence purport to characterize the Gulf of Mexico OCS Oil and Gas Lease Sales: 2017-2022 Gulf of Mexico Lease Sales 249, 250, 251, 252, 253, 254, 256, 257, 259, and 261 Draft Environmental Impact Statement (Draft Multisale EIS), which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced Draft Multisale EIS, they are denied.

99.   Defendants admit the allegations in Paragraph 99.

100.   The allegations in Paragraph 100 purport to characterize the Final Multisale EIS, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced EIS, they are denied.

101.   Defendants admit the allegations in the first sentence of Paragraph 101. The remaining allegations of Paragraph 101 purport to characterize the Gulf of Mexico OCS Lease Sale Draft Supplemental Environmental Impact Statement (2018 Draft SEIS), which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced Draft SEIS, they are denied.

102.   Defendants admit the allegations in the first sentence of Paragraph 102.  The remaining allegations purport to characterize the final Gulf of Mexico OCS Lease Sale Supplemental Environmental Impact Statement (2018 SEIS), which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced 2018 SEIS, they are denied.

103.    The allegations in Paragraph 103 purport to characterize the ROD for Lease Sale 257 and a judicial decision in *Friends of the Earth v. Haaland*, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced ROD and judicial decision, they are denied. Defendants aver that on appeal, the D.C. Circuit held the challenge to Lease Sale 257 moot in light of the intervening passage of the IRA and vacated the District Court's opinion. Further, the Circuit Court remanded the case to the District Court with instructions to dismiss the case as moot.

104.    The allegations in Paragraph 104 purport to characterize the IRA and a judicial decision in *Friends of the Earth v. Haaland*, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced ROD and judicial decision, they are denied.

105.    Defendants admit the allegations in Paragraph 105.

106.    Defendants admit that on October 6, 2022, Interior released the Gulf of Mexico OCS Oil and Gas Lease Sales 259 and 261 Draft Supplemental Environmental Impact Statement (Draft SEIS) with a 45-day public comment period that closed on November 21, 2022. The remaining allegations in the first sentence, such as those related to "next steps" and "other lease sales," are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis. The allegations in the third sentence purports to characterize the Draft SEIS, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced Draft SEIS, they are denied.

107.    The allegations in Paragraph 107 purport to characterize Plaintiffs' comments on the draft 2023 SEIS, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced comments, they are denied.

108.    The allegations in the first sentence of Paragraph 108 purport to characterize the 2023 SEIS and GHG and Social Cost Analysis, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced SEIS and GHG and Social Cost Analysis, they are denied.  Defendants deny the remaining allegations in Paragraph 108.

109.    The allegations in the first sentence of Paragraph 109 are denied.  The allegations in the second sentence purports to characterize the 2023 SEIS, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced 2023 SEIS, they are denied.

110.    Defendants deny the allegations in the first and second sentences of Paragraph 110. The allegations in the third and fourth sentences purport to characterize journal articles and reports, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced articles, they are denied. The allegations in the fifth sentence are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis.

111.    Defendants deny the allegations in the first sentence of Paragraph 111. Defendants admit that impacts from climate change include sea level rise, flooding, and increased storms that affect Gulf communities, which were analyzed in the 2023 SEIS. The allegations in the third sentence are vague and ambiguous; Defendants therefore lack knowledge or

information sufficient to form a belief about the truth of the allegations and deny on that basis. The allegations in the fourth sentence purport to characterize a journal article, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced article, they are denied.

112. The allegations in the Paragraph 112 purport to characterize Executive Orders 13985, 14096 and 12898, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced executive orders, they are denied.

113. The allegations in Paragraph 113 purport to characterize the 2023 SEIS and the ROD for Lease Sale 261 and referenced Executive Orders, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced SEIS, ROD, and Executive Orders, they are denied.

114. Defendants deny the allegations in the first and second sentence of Paragraph 114. The third sentence purports to characterize the EISs analyzing the effects of Lease Sale 261 and the 2018 Spill Risk Study, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the EISs and Study, they are denied. Defendants deny the allegations in the fourth sentence. The allegations in the fifth sentence are vague and ambiguous; Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations and deny on that basis. In the sixth sentence, Defendants admit that NOAA has stated that scientists have estimated that the population of the Rice's whale decreased by 22 percent following the 2010 Deepwater Horizon disaster. In the seventh sentence, Defendants admit that the Rice's whale is a listed endangered species under the Endangered Species Act, and that

NOAA has noted that the death of a single breeding female could significantly affect the persistence of the Rice's whale population. The eighth sentence of Paragraph 114 purports to characterize BOEM's Gulf of Mexico Catastrophic Spill Event Analysis, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced analysis, they are denied.  The remaining allegations in Paragraph 114 are denied.

115.   The allegations in the first sentence of Paragraph 115 are denied. The remaining allegations purport to characterize the 2023 SEIS, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced SEIS, they are denied.

116.   Defendants deny the allegations in Paragraph 116.

117.   Defendants deny the allegations in Paragraph 117.

118.   Defendants admit that BOEM released its Final SEIS for Lease Sale 259 on January 10, 2023, and that the SEIS included an Appendix C entitled "Responses to Public Comments on the Draft Supplemental EIS."  Defendants deny the remaining allegations in Paragraph 118.

119.   The allegations in the first sentence of Paragraph 119 purport to characterize the 2023 SEIS which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced guidance, they are denied.  Defendants admit that BOEM did not complete another supplemental environmental impact statement for Lease Sale 261 and did publish the Errata Sheet for the 2023 SEIS and an updated version of the GHG Analysis.  The remaining allegations in the second sentence of Paragraph 119 purports to characterize the updated GHG Analysis and the 2023 SEIS

which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the referenced guidance, they are denied.

120. Defendants aver that on August 25, 2023, BOEM announced in the Federal Register the availability of a ROD for Lease Sale 261. The remaining allegations of Paragraph 120 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the referenced ROD, they are denied.

121. Defendants incorporate by reference their responses to Paragraphs 1-120.

122. The allegations in Paragraph 122 are conclusions of law to which no response is required; to the extent a response is required, they are denied.

123. The allegations in Paragraph 123 purport to characterize NEPA and the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with NEPA and the implementing regulations, they are denied.

124. The allegations in Paragraph 124 purport to characterize the 2023 SEIS, which speaks for itself and is the best evidence of its contents; to the extent the allegations are inconsistent with the 2023 SEIS, they are denied.

125. Defendants deny the allegations in Paragraph 125.

126. Defendants deny the allegations in Paragraph 126.

127. Defendants deny the allegations in Paragraph 127.

128. Defendants deny the allegations in Paragraph 128.

129. Defendants deny the allegations in Paragraph 129.

130. Defendants deny the allegations in Paragraph 130.

131.   Defendants deny the allegations in Paragraph 131.

132.   Defendants deny the allegations in Paragraph 132.

133.   Defendants deny the allegations in Paragraph 133.

134.   Defendants deny the allegations in Paragraph 134.

135.   The allegations in Paragraph 135 are conclusions of law to which no response is required; to the extent a response is required, they are denied.

136.   Defendants incorporate by reference their responses to Paragraphs 1-135.

137.   The allegations in Paragraph 137 purport to characterize NEPA and CEQ's regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with NEPA and the implementing regulations, they are denied.

138.   The allegations in Paragraph 138 appear to characterize NEPA and CEQ's regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the NEPA and the implementing regulations, they are denied.

139.   The allegations in Paragraph 139 purport to characterize NEPA, and the CEQ regulations implementing NEPA, which speak for themselves and are the best evidence of their contents; to the extent the allegations are inconsistent with the NEPA and the implementing regulations, they are denied.

140.   Defendants deny the allegations in Paragraph 140.

141.   Defendants admit that BOEM considered four action alternatives and the "no action" alternative in the 2023 SEIS and denies the remaining allegations in Paragraph 141.

142.    The allegations in Paragraph 142 purport to characterize comments submitted on the

        Draft SEIS, which speak for themselves and are the best evidence of their contents; to the

        extent the allegations are inconsistent with the comments, they are denied.

143.    Defendants deny the allegations in Paragraph 143.

144.    Defendants deny the allegations in Paragraph 144.

145.    The allegations in Paragraph 145 are conclusions of law to which no response is required;

        to the extent a response is required, they are denied.

## RESPONSE TO PRAYER FOR RELIEF

The remaining Paragraphs of Plaintiffs' Complaint set forth Plaintiffs' prayer for relief and do not require a response. To the extent a response is necessary, Defendants deny that Plaintiffs are entitled to any relief whatsoever.

## GENERAL DENIAL

Defendants deny any allegations of Plaintiffs' Complaint, whether express or implied, that are not expressly denied, admitted, or qualified herein.

## AFFIRMATIVE DEFENSES

1.  Plaintiffs have failed to state a claim for which relief can be granted.

2.  The court lacks jurisdiction over one or more of Plaintiffs' claims.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs any relief, dismiss the Complaint with prejudice, grant judgment for Defendants, and grant Defendants such other relief as the Court deems appropriate.

Respectfully submitted this 13th day of November, 2023,

TODD KIM
Assistant Attorney General
Environmental & Natural Resource Division

GUILLERMO A. MONTERO

Assistant Chief, Natural Resources Section

/s/ *Luther L. Hajek*
LUTHER L. HAJEK
Trial Attorney (D.C. Bar: 467742)
United States Department of Justice
Environment and Natural Resources Division
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
E-mail: luke.hajek@usdoj.gov

/s/ *Alexis G. Romero*
ALEXIS G. ROMERO
Trial Attorney (D.C. Bar: 90006907)
United States Department of Justice
Environment & Natural Resources Division
Natural Resource Section
P.O. Box 7611,
Washington, DC 20044-7611
Tel: 203-353-5885
E-mail: alexis.romero@usdoj.gov

*Attorneys for Federal Defendants*